Our third case for this morning is National American Insurance Company v. Harleysville Lake State Insurance Company. Mr. Strensky. May it please the Court, Jim Strensky on behalf of Appellants, National American Insurance Company and State National Insurance Company. This case is about which insurance policy provides coverage for injuries sustained by a forklift driver. This Court should reverse the District Court's grant of summary judgment on behalf of Harleysville for three reasons. First, policies at issue are designed to have coverage under one policy end where the coverage under the other policy picks up. Because the truck, there is coverage under the Harleysville policy and not under the National American or the State National policy. But he wasn't unloading. The District Court says the crux of the question is whether Harleysville or State National covers it, but he has stopped unloading, takes off his seatbelt, puts the emergency brakes on, goes to the end of the road. It's not being used for any kind of loading, unloading purpose. It's just a thing that flies through the trailer and hits him because she started the truck. Right. Under the Indiana case, American States v. Statesman Insurance Company, the Indiana Supreme Court in 1973 held that loading and unloading includes both actions subsequent and previous to the actual unloading and unloading. But nothing about his loading and unloading made this accident happen. The only thing that made the accident happen was her starting the truck. Right. If the forklift had been passing in front of the truck and the truck driver pulled out prematurely and hit the forklift, would that be covered by State National's policy and I'm wondering why or why not and I'm also wondering if that situation would be distinguishable from what happened here. I'm sorry, Your Honor, could you repeat the hypothetical? Sure. If the forklift had been passing in front of the truck and the truck driver pulls out prematurely and hits the forklift, would that be covered by State National's policy? Yes, it would, Your Honor. The distinction here is that Mr. Harden, who was a forklift operator, was in fact, was unloading. They had two more pallets to go. He was in the process of unloading those when there was some disputed evidence as to whether the signal for I'm done in any powder coatings was a honk of the horn. But what's the best evidence that you would have that the damages arose from the actions of the forklift driver rather than the truck driver? Well, in Indiana, Indiana has adopted the efficient predominating cause test and under the case law that has been adopted first in the Indiana Code of Conduct, there is a in the Indiana Lubberman's case that I talked about earlier, the 1973 Indiana Supreme Court case that adopted the efficient predominating cause test and then adopted by Westfield Insurance versus Herbert, which is a Seventh Circuit opinion, is that which sets in motion the chain of circumstances. And that's the truck driver. If the truck driver had left for a truck in park and the truck had stayed in park and he got off to check to see if anybody was there, nothing would have happened. The only thing that made this forklift go careening through the trailer was the fact that she started the truck. I mean, so the district court finds, and I think you'll have trouble contradicting this, that the efficient predominating cause or whatever other formula of words you want to use was her decision to start the truck. She'd made that decision. Your Honor, the distinction... Absent the truck's movement, nothing happens. There's no accident. He's not loading or unloading at that moment. He's in the back waving, you know, trying to alert her to the fact that he's still there. Right. But under the Indiana Lubberman's case, loading and unloading includes actions before the truck. I don't think that helps you that much, though, because it still doesn't mean that the loading or unloading was the efficient and predominating cause. The loading and unloading had nothing to do. It could have been one of the pallets that flew through the truck or it could have been, you know, a large piece of machinery that somebody had left in the truck. It could have been anything. At this point, it's just a thing that goes through the truck and pins him to the side of the truck. It's not the forklift being used for loading or unloading. Well, Your Honor, it's clear that the but-for or cause-in-fact test has been rejected by the courts and instead they've used the efficient predominating cause. Which, as you said, the Westfield insurance against Herbert, that which sets in motion the chain of circumstances leading up to the injury, how can that be anything but her starting to pull out? Because it was the unloading, which wasn't done at the time, set in motion. There's evidence that... I don't see how you could get there. There is evidence... I mean, he was born, too, and I guess that made the accident happen, but the fact that he's in the truck is about the only thing you have going for you on this theory. If he hadn't at some point wanted to load or unload, he wouldn't have been in the trailer part of the accident. That's true. Well, Your Honor, it seemed to me, obviously, but you're right, but for his being born, nothing would have happened. But I think a lot of times there are, in these cases, there's a distinguished... especially in the Herbert case, with the passage of time. That case involved a young man who was removed the gasket in the morning and then he, for some reason, set on fire in the afternoon. Because he soaks it in gasoline for reasons best known to himself. Only to himself, exactly. And he injured a young girl. A neighbor. A nine-year-old. But in that case, the court distinguished that there was this passage of time. In this instance, it seems to me that the unloading was still going on. I understand he got off of the forklift, but there's also mixed evidence as to he initiated that action by honking his horn. Ms. Parker said he didn't honk the horn. She said she heard a horn honk. He said, I didn't honk the horn. And the district judge isn't worried about that dispute of fact, because the district judge thinks that it's so clear that it's the initiation of movement by the truck that causes this whole accident to happen. Nothing would have happened if it had just stayed there parked. And if you read the language of the insurance policy, and this moving piece of equipment language that is at issue here, bodily injury, this is the exclusion of the state national policy, resulting from the it's not from the movement of property by mechanical device. It's the truck. I understand the truck is what had a role in it. It has more than a role. Can you, in your mind, imagine this happening without the truck starting? No, Your Honor. No. But appellant's position is that without the loading and unloading, which was still going on at the time, this is so close that there is, in fact, coverage under the Hardeesville policy. I also wanted to talk about and bring up that there is a later, fairly recent case in Indiana, Keckler versus Meridian Insurance, that holds that when there is more than one possible cause of an otherwise insurable injury, it is a question of fact as to what the predominant cause of that injury was. So in other words, if there is any issue as to if there is more than one cause, that is, in fact, a question of fact. It's not appropriate for summary judgment. In that case involved, it was an auto policy. There was an accident. There was some evidence that the young man who caused the accident had ingested marijuana before, and there was a controlled substances exclusion in that policy. So the insurance company won summary judgment at the trial court level there. The Court of Appeals said no, there are some issues as to whether the cannabis ingestion is the cause of the accident, or it was his driving of the auto caused the accident. And summary judgment in that case was reversed. It's a 2012 case in Indiana. It was good law and is probably, I believe, is the most recent comment on this predominant cause issue. So that reason alone... Yeah, I mean, the district court understood that theory, I think, but you'd have to find that the facts could, the facts in the light most favorable to the non-moving party could support a finding of more than one possible cause before you get to the need for a trial. Right. The... Appley has also raised in their briefs a bunch of affirmative offenses that also, they argue, supply grounds for the summary judgment that was entered in this case. And the appellant's position is that the late notice defense does not apply. There was evidence there was, in fact, notice given to the agent, which then gets imputed to the insurance company. There also was evidence that if, in fact, Harleysville had known of this, there was a significant delay in Harleysville getting notice of this claim in the lawsuit. But under Indiana law, there is prejudice can be presumed if there is a delay. However, there was also testimony provided that even if they had known of it earlier, they would have just denied the claim. And under the Wolf Lake Terminals case, that's sufficient to rebut any presumption of late notice. It's also from defense of that the insured venture logistics was not involved, and that because they are an indispensable party, the case should be dismissed. That argument was first brought, not as an affirmative defense, but the summary judgment briefs. Additionally, venture logistics interests would be protected in this matter, because it is, in fact, a dispute between two insurance companies, and they'll have no harm if this court were to reverse the summary judgment on behalf of Harleysville. Well, if you'd like to save just a bit for rebuttal, it's certainly appropriate. Thank you. May it please the court, counsel. My name is John Pigore. I represent the defendant, Appa Lee, Harleysville. With me at counsel table, I'd like to introduce Michelle Basset. She is our company claim representative, and Brian Sanchez, the co-author of our brief. We are asking this court to affirm the judgment entered by the district court. The question presented to this court is whether the Harleysville policy exclusion for use of an auto clearly and unambiguously excludes coverage for the underlying suit. Does the Harleysville policy cover a forklift accident if the forklift is simply moving cargo around a warehouse? No. See, I was wondering if that's what the exception to the exclusion is meant to address. What I'm referring to is the exclusion on the bottom of page 8 in your brief and the exception to the definition of loading and unloading on page 9. We're talking here about the mechanical device exception to the exclusion for loading and unloading. That exception does not apply to the exclusion for operation. So that's the, just to be specific, this is what you've reproduced at the bottom of page 9, the exception, but loading and unloading does not include, et cetera. There is an exception to the exclusion for loading or unloading. That exception is the use of a mechanical device. Right, then I'm just confirming that you've reproduced that at the bottom of page 9 of your brief. Yes, Your Honor. The exception to the exclusion for loading or unloading, i.e., the mechanical device, does not apply to the exclusion for operation of an auto. And it's the exclusion for operation of an auto which we believe is clearly applicable here because Ms. Parker operated the truck when she drove away from the dock. And it is the operation of the truck, not the use of the forklift, that is the efficient and predominating cause. Also, when we look at the policy as a whole, we see that the NICO policy covers bodily injury that results from the use of an auto. Legal liability of the insured to pay damages arising out of the use of an auto. The Harleysville policy excludes legal liability for bodily injury arising out of the use of an auto. So you're saying they're mirror images that you're... Indeed they are. No one was legally liable in this case. In fact, I should say Venture and its driver Parker were not legally liable for the operation of the forklift. Operation of the forklift, if it weighs in this case at all, is a damage-reducing factor. Mr. Harden may have been negligent in the operation of the forklift. Mr. Harden may have given a signal to Ms. Parker that it was safe to drive away. He may have honked his horn, we don't know. There may have been negligence in the operation of the forklift. His injury may have arisen out of his operation of the forklift. But when we look at the policies as a whole, neither NACO nor Harleysville covers the negligence of the injured party. The policies cover the negligence that is the conduct of the insured. And in fact, I drew this analogy in the brief and I thought I heard Justice Rovner allude to it when you asked... I'm not a lawyer, I'm just a judge. When you asked, would the injury arise out of the use of the forklift if Mr. Harden had been driving in front of the truck and Ms. Parker pulled away and hit the forklift? The analogy I drew in the brief, what if she had hit a child on a bicycle as she was driving away from the dock? Would we say that the injury arose out of the use of the bicycle and therefore the auto policy doesn't apply? No, of course not. The reason the answer to that question is no is because both policies cover the conduct of the insured. Both policies cover the legal liability of the insured. For the operation of the auto, that's NACO. For the operation of the forklift, that's Harleysville. Efficient and predominating cause here, no question of fact. It's the operation of the truck that caused the injury. If there was operation of the forklift, that's not covered. That's the damage reducing factor. For those reasons, Your Honor, we believe you don't have to get to late notice. We believe you don't have to get to the plethora of affirmative defenses that we raised, all of which, if I could just sum them up in one succinct thought, all of those affirmative defenses stem from the fundamental fact that NACO slept on their rights here. Harleysville got notice 45 months after the accident, 34 months after the suit was filed. Prejudice is presumed, and it's manifest here. Not only were we unable to investigate, unable to defend, they never got a hold of their driver. They didn't even put her on. If there was an affirmative defense to be made here, they didn't get it on, and they paid for that. They don't have a right of subrogation because the two policies don't insure the same loss. They don't have a right of contribution because the two policies didn't insure the same risk. When an insurance company finds itself in the position that NACO found itself here, there is relief, but they have to move promptly to file a complaint for declaratory judgment against their insured for a declaration that they don't owe a duty to defend as to their insured. They didn't do that either. And so for all these reasons, Your Honor, we are asking this Court to affirm the judgment of the District Court. Thank you, Your Honor. Thank you very much, Mr. Pecore. Anything further, Mr. Stransky? You have a little bit of time. The issue that Mr. Hardin operated the forklift is, while true, it doesn't, it's not dispositive on the fact of whether there's coverage. In this case, you would, Venture Logistics, the insured for both, was sued. So we need to figure out how the forklift could have been the efficient and predominating cause, how the operation of the forklift could have been that. In the language of these policies, don't require that the named insured be the one operating the forklift or using the mechanical device. No, I understand that a company doesn't operate the forklift. It had to be a person. But I'm still a little confused as to how this thing inside the trailer caused the accident. Because there is evidence of, that Mr. Hardin is the person who initiated this by honking the horn. Just briefly, Your Honor, on the issue of bringing, Mr. Pecore, arguing that my clients need to file a declaratory judgment. They didn't. It's perfectly acceptable under Indiana law if you want to pay out a claim, even if you're not sure whether it should be paid or not, if there's coverage, and to go back and file a subrogation claim against the person that you think does owe. And that's exactly what my clients did. That's all. Thank you, Your Honor. All right. Well, thank you very much. Thanks to both counsel. We'll take the case under advisement.